1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    BERNARD GLEN TAYLOR,                          No.  2:19-CV-2375-DJC-DMC-P

12                    Plaintiff,

13         v.                                        <u>FINDINGS AND RECOMMENDATIONS</u>

14    JOHN SONZA et al.,

15                    Defendants.

16

17          Plaintiff, who is proceeding pro se, brings this civil rights action pursuant to 42

18    U.S.C. § 1983.  Pending before the Court is Defendant Palagummi's unopposed motion for

19    summary judgment.  <u>See</u> ECF No. 66.

20          The Federal Rules of Civil Procedure provide for summary judgment or summary

21    adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

22    together with affidavits, if any, show that there is no genuine issue as to any material fact and that

23    the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The

24    standard for summary judgment and summary adjudication is the same.  <u>See</u> Fed. R. Civ. P.

25    56(a), 56(c); <u>see also</u> <u>Mora v. ChemTronics</u>, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).  One of

26    the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  <u>See</u>

27    / / /

28    / / /

                                              1

1  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

2  moving party

> . . . always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.

6  Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

7  If the moving party meets its initial responsibility, the burden then shifts to the

8  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

9  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

10  establish the existence of this factual dispute, the opposing party may not rely upon the

11  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

12  form of affidavits, and/or admissible discovery material, in support of its contention that the

13  dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

14  opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

15  affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

16  242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

17  Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

18  return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

19  (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than

20  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

21  taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

22  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the

23  claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

24  of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

25  In resolving the summary judgment motion, the court examines the pleadings,

26  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

27  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson,

28  477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

1    court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

2    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

3    produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

4    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

5    1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

6    judge, not whether there is literally no evidence, but whether there is any upon which a jury could

7    properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

8    imposed." Anderson, 477 U.S. at 251.

9

10                                **I.  BACKGOUND**

11        A.    **Procedural History**

12            Plaintiff Bernard Glen Taylor, a state prisoner at the time, initiated this action by

13    filing a pro se civil rights complaint under 42 U.S.C. § 1983 on November 21, 2019.  See ECF

14    No. 1.  On December 2, 2019, Plaintiff filed a first amended complaint as of right pursuant to

15    Federal Rule of Civil Procedure 15.  See ECF No. 5.  The Court screened the first amended

16    complaint and directed Plaintiff to file a second amended complaint.  See ECF No. 12.  Plaintiff

17    complied and filed a second amended complaint on June 2, 2021.  See ECF No. 16.  On August 4,

18    2021, the Court screened the second amended complaint, found the second amended complaint

19    states cognizable claims against Defendants Palagummi and Sonza, and provided Plaintiff an

20    opportunity to file a third amended complaint within 30 days as to his claims against Defendant

21    Malakkla.  See ECF No. 17.  Plaintiff filed a notice of voluntary dismissal of Defendant

22    Malakkla, who was dismissed on August 30, 2021, on Plaintiff's notice.  See ECF No. 22.  On the

23    same day, the Court directed service of the second amended complaint on Defendants Palagummi

24    and Sonza.  See ECF No. 23.

25    / / /

26    / / /

27    / / /

28    / / /

3

On September 15, 2021, the Attorney General's office filed a notice of its intent to not waive service as to Defendant Sonza.  See ECF No. 27.  On October 19, 2021, summons was returned unexecuted by the United States Marshal as to Defendant Sonza, who remains unserved.[1]  See ECF No. 30.  Defendant Palagummi waived service on October 22, 2021.  See ECF No. 31.  Following proceedings on Defendant Palabummi's motion to revoke Plaintiff's in forma pauperis status, which was granted, Plaintiff paid the filing fees for this case and Defendant Palagummi filed an answer on April 17, 2023.  See ECF No. 53.  On May 26, 2023, The Court issued a schedule for the case.  See ECF No. 57.  After the close of discovery, Defendant Palagummi filed the currently pending motion for summary judgment.  See ECF No. 66.  Plaintiff has not filed an opposition.

## B.    Plaintiff's Allegations

This action currently proceeds on Plaintiff's second amended complaint.  See ECF No. 16.  Plaintiff alleges Defendant Palagummi was, at the times relevant to the complaint, a doctor at the California Health Care Facility (CHCF).  See ECF No. 16, pgs. 2-3.  Plaintiff claims Defendant Palagummi "ignored or disregarded" his diagnosis by a previous doctor.  See id. Plaintiff asserts Defendant Palgummi failed to provide adequate treatment for his kidney problems.  See id.  As a result, Plaintiff claims he has suffered blood infections, lost kidney function, and has requires dialysis.  See id.

## II. THE PARTIES' EVIDENCE

Defendant's unopposed motion for summary judgment is supported by a statement of Defendant's Undisputed Facts (DUF), ECF No. 66-5, and the declarations of Defendant Palagummi, ECF No. 66-2, B. Feinberg, M.D., ECF No. 66-3, and defense counsel Evan Medina, Esq., ECF No. 66-4.  Plaintiff has not filed an opposition to Defendant's motion, nor does he otherwise dispute any of Defendant's evidence.  The docket reflects no filings by Plaintiff after Defendant's motion for summary judgment was filed.

---

[1]    The Court will recommend dismissal of Defendant Sonza for failure to effect timely service of process as required under Federal Rule of Civil Procedure 4(m).

1    Given that Defendant's motion is unopposed, the facts asserted by Defendant are

2    necessarily undisputed and the Court accepts Defendant's summary of the relevant facts as

3    follows:

4                * * *

5         5.    Plaintiff was first notified of his kidney disease around
6    2005 by Dr. Ruggles.  (Medina Decl. at Ex. A, Deposition of Plaintiff, at
     pp. 17:22-18:6.)

7         6.    Plaintiff was referred to Dr. Ruggles after experiencing flu-
8    like symptoms and exhaustion.  (Medina Decl. at Ex. A, Pl.'s Depo. Tr., p.
     19:1-12.)

9         7.    Plaintiff cannot remember what exactly Dr. Ruggles did to
10   treat him, but he recalls receiving a steroid and another medication.
     (Medina Decl. at Ex. A, Pl.'s Depo. Tr., p. 19:13-16.)

11        8.    Plaintiff's symptoms resolved after 90 days.  (Medina Decl.
12   at Ex. A, Pl.'s Depo. Tr., p. 19:17-21.)

13        9.    After his symptoms resolved in 2005, Plaintiff did not
     monitor his kidneys.  (Medina Decl. at Ex. A, Pl.'s Depo. Tr., p. 20:8-14.)

14        10.   Plaintiff arrived at Dual Vocational Institution (DVI) on
15   September 7, 2016, at the beginning of his incarceration.  (Medina Decl. at
     Ex. A, Pl.'s Depo. Tr., p. 14:14-25.)

16        11.   DVI was a reception facility.  Inmates would come to DVI
17   to get processed into CDCR custody.  After they were processed, prisoners
     were transferred to a different, long-term institution.  (Palagummi Decl. ¶
18   5; Medina Decl. at Ex. A, Pl.'s Depo. Tr., p. 56:6-19.)

19        12.   Plaintiff remained at DVI for approximately three months
     and then transferred to CHCF on December 5, 2016.  (Medina Decl. at Ex.
20   A, Pl.'s Depo. Tr., p. 15:3-7.)

21        13.   Plaintiff remained at CHCF until he was released in 2021.
     (Medina Decl. at Ex. A, Pl.'s Depo. Tr., p. 15:8-11.)

22        14.   Dr. Palagummi never worked at CHCF.  (Palagummi Decl.
23   ¶ 4.)

24        15.   Plaintiff mistook Dr. Palagummi for a doctor who treated
     him at CHCF.  Before Plaintiff's deposition, Plaintiff thought Dr.
25   Palagummi was an African male doctor who worked at CHCF.  In fact,
     Dr. Palagummi is an Indian woman who worked at DVI.  (Medina Decl.
26   at Ex. A, Pl.'s Depo. Tr., pp. 47:2-51:5; Palagummi Decl. ¶¶ 2, 3.)

27        16.   Plaintiff was seen by many health care providers while in
     prison.  (Medina Decl. at Ex. A, Pl.'s Depo. Tr., p. 47:15-24; see
28   Palagummi Decl. ¶ 6.)

5

17.    At his initial health screening at DVI, Plaintiff was noted to be receiving medical care for high blood pressure (HTN or hypertension) and for mental health conditions. (Feinberg Decl. ¶ 9.)

18.    On September 14, 2016, Plaintiff saw non-defendant Physician Assistant Street for an intake history and physical. At this visit, Plaintiff's medical history was documented to be notable only for high blood pressure. Plaintiff stated that he was compliant with taking two high blood pressure medications. Plaintiff's blood pressure was noted to be well-controlled. (Feinberg Decl. ¶ 10; Medina Decl. at Ex. A, Pl.'s Depo. Tr., p. 66:11-68:6.)

19.    Plaintiff saw Dr. Palagummi on September 23, 2016, for the first time. The visit was scheduled to address Plaintiff's history of a latent tuberculosis infection. Dr. Palagummi noted that Plaintiff had no symptoms of an active tuberculosis infection but ordered a chest x-ray for further evaluation. Plaintiff's blood pressure was well-controlled. (Feinberg Decl. ¶ 11; Palagummi Decl. ¶ 8.)

* * *

22.    On September 30, 2016, Plaintiff saw Dr. Palagummi for a follow-up of his latent tuberculosis infection. Dr. Palagummi noted that Plaintiff's x-ray showed no active tuberculosis, but that Plaintiff refused treatment for his latent tuberculosis as recommended. Plaintiff's blood pressure was well controlled. (Feinberg Decl. ¶ 14; Palagummi Decl. ¶ 9.)

23.    On October 12, 2016, Plaintiff saw Dr. Palagummi for a follow-up of the September 27, 2016, lab tests and for a follow-up of his high blood pressure. Dr. Palagummi noted that Plaintiff's cholesterol was elevated and ordered a cholesterol lowering medication. For Plaintiff's mild anemia, Dr. Palagummi opined that these results may be due to mild CKD (chronic kidney disease). Dr. Palagummi ordered blood work to determine Plaintiff's iron levels to help clarify his type of anemia, though Plaintiff refused studies to rule out possible causes of his anemia other than CKD, such as colon cancer. Plaintiff's blood pressure was well controlled. (Feinberg Decl. ¶ 15; Palagummi Decl. ¶ 10.)

24.    On October 26, 2017, Plaintiff saw Dr. Palagummi for a follow-up of his iron studies. The studies were normal and Dr. Palagummi opined that Plaintiff's mild anemia may be due to his CKD and ordered further studies to reassess his CKD. Plaintiff's blood pressure was well controlled. (Feinberg Decl. ¶ 16; Palagummi Decl. ¶ 12.)

25.    On November 1, 2016, Plaintiff had lab work with essentially unchanged results related to his mild CKD. (Feinberg Decl. ¶ 17; Palagummi Decl. ¶ 13.)

26.    On November 3, 2016, Dr. Palagummi reviewed the lab results and submitted a request for Plaintiff to be scheduled for a follow-up appointment to discuss these results. (Feinberg Decl. ¶ 18; Palagummi Decl. ¶ 13.)

/ / /

6

27. On November 16, 2016, Plaintiff saw Dr. Palagummi for a follow-up of his lab results. Dr. Palagummi noted that the iron studies were normal and therefore iron deficiency was not a cause of Plaintiff's anemia. She ordered further studies to look for other causes of anemia, such as folic acid or B12 deficiencies, or hemoglobinopathies such as a sickle cell trait. Plaintiff's blood pressure was still well-controlled at this visit. This was the last time Dr. Palagummi met with Plaintiff. (Feinberg Decl. ¶ 19; Palagummi Decl. ¶ 14.)

28. On December 2, 2016, Plaintiff had lab work with unchanged results relating to his mild CKD. Plaintiff's hemoglobin electrophoresis ordered by Dr. Palagummi was consistent with the diagnosis of sickle cell trait. Thus, sickle cell trait appeared to be a potential cause of Plaintiff's anemia. (Feinberg Decl. ¶ 21; Palagummi Decl. ¶ 16.)

29. Plaintiff transferred to CHCF on December 5, 2016. (Medina Decl. at Ex. A, Pl.'s Depo. Tr., p. 15:3-7; Feinberg Decl. ¶ 22.)

30. On December 8, 2016, Dr. Palagummi reviewed the lab results from December 2, 2016, and submitted a request for Plaintiff to be scheduled for a follow-up to discuss the results. Dr. Palagummi was unaware that Plaintiff had transferred three days prior. This represents Dr. Palagummi's last involvement in Plaintiff's medical care and Dr. Palagummi had no control over Plaintiff's care after he transferred. (Feinberg Decl. ¶ 21; Palagummi Decl. ¶ 16.)

31. Plaintiff admits that he did not experience any symptoms related to his kidneys while he was at DVI. (Medina Decl. at Ex. A, Pl.'s Depo. Tr., pp. 21:19-22:4.)

32. Plaintiff had lab work performed on April 28, 2017, at CHCF and the results related to his mild CKD remained essentially unchanged. (Feinberg Decl. ¶ 24.)

33. Plaintiff did not begin to experience symptoms related to his kidneys until a year to a year-and-a-half after his interactions with Dr. Palagummi. (Medina Decl. at Ex. A, Pl.'s Depo. Tr., pp. 21:19-22:11.)

* * *

38. Plaintiff admits that Dr. Palagummi never assisted with his dialysis because he was not on dialysis when he was seeing Dr. Palagummi. (Medina Decl. at Ex. A, Pl.'s Depo. Tr., p. 92:13-21.)

39. Dr. Palagummi provided Plaintiff with timely, judicious, and medically appropriate care responsive to his medical needs. Plaintiff's claim that Dr. Palagummi was deliberately indifferent by failing to provide adequate treatment for his kidney problems is not supported by the medical record. Dr. Palagummi's treatment related to Plaintiff's mild CKD was appropriate because she ensured that his blood pressure was well-controlled, and she frequently reviewed Plaintiff's lab results related to his mild CKD to make sure that his levels did not worsen. Plaintiff's lab results related to mild CKD remained essentially unchanged while he was at DVI, indicating that his mild CKD was successfully being slowed

7

in its progression.  Further, it was unnecessary to refer Plaintiff to a
nephrologist while he was at DVI because his eGFR remained around 54
and did not go below 30.  Dr. Palagummi's care was medical acceptable
under the circumstances, and no actions of inactions of Dr. Palagummi
caused or contributed to Plaintiff's unfortunate subsequent kidney failure.
(Feinberg Decl. ¶ 27; Palagummi Decl. ¶ 17.)

ECF No. 66-5, pgs. 2–9.

## III.  DISCUSSION

In her motion for summary judgment, Defendant Palagummi argues she is entitled

to judgment in her favor as a matter of law because the undisputed facts show: (1) while at DVI,

Defendant provided adequate medical care; and (2) while at CHCF, Defendant had no

involvement in Plaintiff's health care.  See ECF No. 66-1.  According to Defendant:

While Plaintiff's kidney failure is undeniably unfortunate, Dr.
Palagummi provided him appropriate and timely care and did not
contribute to his kidney failure. At his deposition, Plaintiff realized that he
had mistaken Dr. Palagummi for a different doctor that treated him at a
different prison. He mistook Dr. Palagummi, an Indian woman who
worked at Deuel Vocational Institute (DVI), for an African male doctor
who worked at CHCF. Plaintiff was incarcerated at DVI for three months
before he transferred to CHCF in 2016, and during that time, Dr.
Palagummi provided him with appropriate medical care. Because Dr.
Palagummi was not deliberately indifferent to Plaintiff's medical needs,
Dr. Palagummi is entitled to summary judgment. . . .

Id. at 2.

For the reasons discussed below, the Court agrees that Defendant is entitled to

judgment in her favor as a matter of law.

A.    **Plaintiff's Received Medical Care from Defendant While at DVI**

The treatment a prisoner receives in prison and the conditions under which the

prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102

(1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

8

1   "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy,

2   801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when

3   two requirements are met: (1) objectively, the official's act or omission must be so serious such

4   that it results in the denial of the minimal civilized measure of life's necessities; and (2)

5   subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

6   inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison

7   official must have a "sufficiently culpable mind." See id.

8          Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

9   injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105;

10  see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health

11  needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is

12  sufficiently serious if the failure to treat a prisoner's condition could result in further significant

13  injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d

14  1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

15  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

16  is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

17  activities; and (3) whether the condition is chronic and accompanied by substantial pain. See

18  Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

19         The requirement of deliberate indifference is less stringent in medical needs cases

20  than in other Eighth Amendment contexts because the responsibility to provide inmates with

21  medical care does not generally conflict with competing penological concerns. See McGuckin,

22  974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to

23  decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

24  1989). The complete denial of medical attention may constitute deliberate indifference. See

25  Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical

26  treatment, or interference with medical treatment, may also constitute deliberate indifference. See

27  Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate

28  that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

9

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

The undisputed evidence in this case establishes that, while Plaintiff was housed at DVI for three months for classification and transfer to another facility, he received medical care from Defendant Palgummi.  Specifically, Plaintiff was seen and treated by Defendant Palagummi on multiple occasions.  At no time during his time at DVI did Plaintiff complain of kidney problems, though Defendant Palagummi nonetheless ordered various tests to rule out complications related to Plaintiff's mild chronic kidney disease.  Based on the evidence presented, the Court finds that Defendant has met her burden on summary judgment of establishing that she was not deliberately indifferent to Plaintiff's medical needs during the time she treated him at DVI.  Because Plaintiff has not filed an opposition to Defendant's motion or otherwise presented any evidence to the Court, Defendant's evidence is necessarily undisputed and Defendant is entitled to judgment in her favor as a matter of law with respect to Plaintiff's claim that, while at DVI, Defendant was deliberately indifferent to his serious medical needs.

## B.    Defendant Had No Involvement in Plaintiff's Medical Care at CHCF

To prevail on a claim under 42 U.S.C. § 1983, the plaintiff must establish an actual connection or link between the actions of the named defendants and the alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional

10

1   deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

2              In the instant case, the undisputed facts show that, put simply, Defendant

3   Palagummi was not involved with Plaintiff's medical treatment while at CHCF after he left DVI.

4   Specifically, the evidence submitted, which Plaintiff does not dispute, establishes that Defendant

5   never worked as a health care provider at CHCF.  Plaintiff has acknowledged this fact at his

6   deposition by admitting to mistaken identity.  The doctor Plaintiff alleges treated him at CHCF is

7   an African male; Defendant Palagummi is an Indian female who never worked at CHCF.  Thus,

8   Defendant has met her burden on summary judgment of establishing the non-existence of an

9   essential element of Plaintiff's claim, specifically, the causal link between Defendant Palagummi

10  and a violation of Plaintiff's constitutional rights while housed at CHCF.  Plaintiff has not filed

11  an opposition to Defendant's motion or otherwise submitted evidence which would establish a

12  genuine dispute as to Defendant's involvement at CHCF.  Defendant is also entitled to judgment

13  in her favor as a matter of law with respect to Plaintiff's claims of deliberate indifference by

14  Defendant Palagummi while Plaintiff was housed at CHCF.

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

**IV.  CONCLUSION**

2          Based on the foregoing, the undersigned recommends as follows:

3          1.      Defendant Sonza be dismissed for failure to effect timely service of

4    process.

5          2.      Defendant Palagummi's unopposed motion for summary judgment, ECF

6    No. 66, be granted.

7          These findings and recommendations are submitted to the United States District

8    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

9    after being served with these findings and recommendations, any party may file written objections

10   with the court.  Responses to objections shall be filed within 14 days after service of objections.

11   Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

12   Ylst, 951 F.2d 1153 (9th Cir. 1991).

13

14   Dated:  July 15, 2025

15   _____

16   DENNIS M. COTA
     UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28